901 F.2d 1130
 284 U.S.App.D.C. 78
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
QUESTAR PIPELINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
AMAX Magnesium Corporation, Colorado Interstate Gas Company,
Intervenors.
 No. 89-1471.
 United States Court of Appeals, District of Columbia Circuit.
 May 14, 1990.
 
 Before SILBERMAN, SENTELLE and CLARENCE THOMAS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came on to be heard on a petition for review of an order of the Federal Energy Regulatory Commission, and was briefed and argued by counsel. While the issues presented occasion no need for an opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 14(c) (August 1, 1987). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the petition for review of the order of the Federal Energy Regulatory Commission is hereby denied for the reasons set forth in the accompanying memorandum. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2) (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 Questar Pipeline Company petitions this court to review an order of the Federal Energy Regulatory Commission requiring Questar to remove and refund a "standby charge" that petitioner had imposed on its affiliate and sole jurisdictional customer, Mountain Fuel Supply Company. The Commission concluded that Questar had failed to demonstrate that the proposed standby charge was just and reasonable, and it decided that the imposition of this charge would contravene the anti-discriminatory and pro-competitive policies of Order No. 436. See "Order Denying Request for Rehearing," 47 FERC p 61,441 (1989); "Order Affirming in Part and Reversing in Part Initial Decision," 47 FERC p 61,012 (1989). Because substantial evidence supported FERC's conclusions and order, we deny the petition for review.
 
 
 5
 In the wake of Commission Order No. 436, Questar offered to unbundle its gas transportation service from its sales service. See Associated Gas Distributors v. FERC, 824 F.2d 981 (D.C.Cir.1987), cert. denied 485 U.S. 1006 (1988). But in doing so, petitioner attempted to recoup some of revenue the pipeline lost when its affiliate and firm sales customer Mountain Fuel only seeks transportation of gas from sources other than Questar. Since Mountain Fuel wished to swing back and forth between purchasing gas and merely seeking transportation from Questar, petitioner proposed to impose a "standby charge" on Mountain Fuel for the costs associated with standing ready to sell gas up to the contractual capacity. This standby charge, however, is triggered not by the purchase-or-transportation decisions of Mountain Fuel but by the decisions of Mountain Fuel's customers. Questar's charge examines whether Mountain Fuel, during a base period between July 1, 1985 and June 30, 1986, provided any sales service to its customers and whether those customers later terminated or diminished their gas purchases from Mountain Fuel.
 
 
 6
 The Commission concluded that although the charge is purportedly aimed at compensating petitioner for standing ready to sell gas to Mountain Fuel, in fact whether Mountain Fuel desires sales or transportation services is irrelevant. FERC decided that Questar and its affiliate were simply imposing a significant additional charge on those end users that decide to purchase gas from non-Questar sources. The high standby charge under those conditions created a substantial anti-competitive effect because it discouraged end users from buying from cheaper gas supplies and pressured them to buy from Questar. Furthermore, since at the time of the Commission's hearing only AMAX Magnesium Corporation was subject to the standby charge, FERC determined the tariff to be discriminatory as well.
 
 
 7
 Petitioner challenges the Commission's conclusions as lacking in substantial evidentiary support and arbitrary and capricious because they are allegedly inconsistent with other cases in which FERC has approved standby charges. We do not find either contention to contain much merit. At the outset, Questar bore the burden of proving that its standby charge was just, reasonable, and consistent with Order No. 436. Based on our review of the record, we conclude that overwhelming evidence supported FERC's view that petitioner had failed to pass that threshold.
 
 
 8
 Questar's counsel candidly admitted at oral argument that the standby charge attempted to render Questar "indifferent" between Mountain Fuel's decision to purchase gas or transportation services. Petitioner would accomplish that indifference by recouping, in the event only transportation was sought, the fixed costs and profits it would have enjoyed in a sales transaction. The standby charge here more than doubled the transportation costs to AMAX when it decided to buy non-Questar supplies. That position is inconsistent with the pro-competitive policies of Order No. 436. Indeed, FERC's regulations expressly forbid tariffs which have "the effect of guaranteeing revenue." 18 C.F.R. Secs. 284.8(d) and 284.9(d). Petitioner argues that despite the standby charge AMAX preferred to use Mountain Fuel for transportation only. But AMAX's decision implies to us merely that the anti-competitive effects of the standby charge were not great enough to overcome the disparity of gas prices between Questar and other suppliers.
 
 
 9
 The Commission also concluded that the standby charge actually discriminated against AMAX. The Commission noted that Questar did not adequately explain the disparity in other transportation rates--ones not at issue here--charged to AMAX and other customers receiving comparable services. Under its rate schedule, petitioner could offer significant discounts on its T-2 interruptible transportation rates. Although Questar granted discounts to many of its transportation customers, the pipeline did not grant AMAX this favorable treatment and so it paid the maximum rate. Moreover, at the time of the hearing, AMAX was the only customer paying the standby charge, a fee that Questar could waive at its discretion. Consequently, we agree with both the ALJ and the Commission that petitioner had subjected AMAX to undue discrimination because AMAX was a sales customer (during the base period determined by Questar) who later converted to being a transportation customer.
 
 
 10
 Petitioner's claim of arbitrary and capricious agency behavior centers around its view that the Commission's order was premised on a false theory of "double recovery" and was also inconsistent with previous cases approving standby charges. In its initial decision, the Commission mentioned that Questar's standby charge would not be just and reasonable since customers would be subject to both a reservation charge and the standby charge. In its motion for rehearing, Questar correctly pointed out that the reservation charge would be waived in the event a standby charge was imposed, thereby eliminating the prospect of double billing. The Commission on rehearing agreed, but reaffirmed its decision that the standby charge violated Order No. 436 and was not just and reasonable. Although much of the petitioner's brief before us argues that the Commission's mistaken understanding of the double charging problem infected all of the Commission's reasoning, we agree with FERC that the other grounds mentioned and reiterated in its rehearing order provided ample justification for its order. Specifically, FERC noted that since the standby charge is triggered by the behavior of Mountain Fuel's customers, the standby charge is not designed to compensate Questar's costs of standing ready for Mountain Fuel's decisions to swing. Both petitioner and FERC agree that if other grounds supporting its action existed, the Commission's recognition that one of its reasons for rejecting the standby charge was erroneous does not invalidate the Commission's order.
 
 
 11
 Finally, Questar argues that FERC has been inconsistent in distinguishing legitimate standby charges from illegitimate ones. To be sure, FERC has yet to explain that distinction in economic terms that make sense to us--what actual costs are pipelines entitled to recover in such a charge? Nevertheless, the discriminatory and anti-competitive features of Questar's standby charge is so palpable in this case that FERC's failure to explain adequately the distinction does not prevent us from seeing this case as clearly falling in the proscribed zone. Thus, Questar's interest in triggering the standby charge based upon Mountain Fuel's customers' actions is wholly distinct from the standby charge FERC approved in El Paso Natural Gas Co., 35 FERC p 61,440 (1986). The standby charge there depended upon the pipeline's jurisdictional customers' decisions and therefore could reasonably be thought a charge for an additional service. Here, the end users do not seek any additional services, and FERC could view the standby charge as an improper sales displacement device.
 
 
 12
 In sum, we conclude that FERC acted reasonably and with substantial evidentiary support when it rejected Questar's standby charge. Accordingly, the petition for review is
 
 
 13
 Denied.